THE FRED. JANSEN.

LYNCH et al. v. THE FRED. JANSEN et al.

(*Circuit Court of Appeals, Second Circuit.* January 18, 1892.)

COLLISION—SAIL AND TUG WITH TOW.
  The schooner T. was going westward through East river, at flood-tide, keeping close to the eastern shore of Ward's island to avail herself of the slack-water. The wind died out as she reached Negro point, and here she was overtaken by a tug towing a schooner on a hawser of about 300 feet. The tug passed on her port side at a distance of from 40 to 150 feet, but, as the T. struck the tide, which here sets strongly towards Long island, she sheered to port, and struck the tow, though she put her wheel hard a-port, and dropped her main peak. *Held*, that the tug was solely in fault, as it was her duty, as an overtaking vessel, to take sufficient room for a safe passage. 44 Fed. Rep. 773, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Admiralty. Libel by Daniel Lynch and others against the steam-tug Fred. Jansen for collision. The libel was dismissed in the district court, which decree was affirmed by the circuit court. Libelants appeal. Reversed.

*Edward D. McCarthy*, for appellants.
*Wm. W. Goodrich*, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. This is an appeal from a decree of the circuit court, affirming a decree of the district court for the southern district of New York, dismissing the libel.

On May 22, 1890, about 11 A. M. the schooner Titus, loaded with sand, was proceeding through Hell Gate, between Ward's island and the Long Island shore, bound for Newark, N. J. She was keeping towards the Ward's Island shore, and her witnesses claim that she was hugging it closely, so as to avail of the slack-water, the tide being then flood. She was heading about south-westerly, with her booms on the starboard side. There had been a little wind about E. N. E., but this died out. As she reached Negro point, which projects into the channel from the Ward's Island shore, she suddenly took a sheer, or rather swept over bodily, towards mid-channel, although, as the answer alleges, "she had put her wheel hard a-port, and dropped her main peak, but was unable to control her movements." Before she took this sheer she was overtaken by the steam-tug Fred. Jansen, towing the schooner William O. Snow on a hawser about 300 feet long. The tug passed the Titus on the latter's port side, and had got beyond her when this sheer took place. The Titus swept over and came in collision with the Snow, although the latter starboarded to avoid her, coming, in consequence, into contact with a lighter on her own port hand. The material point in the case is the distance at which the tug passed the Titus; for, being the overtaking vessel, it was her duty to allow a sufficient margin of safety for herself and her tow, or to delay passing the Titus till a wider channel, the absence of other craft, or a more favorable condition of wind and tidal currents gave assurance that she might pass in safety. There is great difference between the witnesses in their estimates of the distance between the tug and the Titus when the former passed her. The witnesses from the Titus make it about 25 feet, those from the tug and the master of the tow 100 to 125 feet, and the tug's pilot 300 feet. Disinterested witnesses estimate it at from 40 to 150 feet. There is a like discrepancy in the estimates as to the distance of the Titus from shore. The district judge found the place of collision to be nearer 300 than 200 feet from shore, and that the tug passed the Titus with a margin of 200 feet, (which is a larger estimate than that of any witness except her pilot;) and held that to be a reasonable distance to pass, because, though the tug's pilot might expect some swinging by the Titus when she struck the flood-tide, he could not expect her to swing out so far. It appears by undisputed testimony that when the tide is flood there is slack-water along the Ward's Island shore, extending out some way from the shore above Negro point, and a sharp set of the tide from Negro point over towards the Long Island shore, the natural tendency of which is to throw a vessel coming out of the slack-water into the tide over towards mid-channel.

The testimony seems to leave no doubt that the movement of the Titus was caused by the action of this tidal current, which she was unable to counteract, because, the wind dying out, she had not sufficient motive power to make headway against it, and that she did all that

good seamanship required in putting her helm hard a-port and dropping her main peak. Whatever, then, may have been the distance of the Titus from the shore when she struck the tide, and at whatever distance the tug passed her, it was undoubtedly so short that a schooner such as the Titus, having but little way on her in so light a wind, would be, by the action of the tide alone, carried over that distance in the time it took the tug and the tow to move about 150 feet; for the Titus did not begin to swing till the Jansen had passed half the length of the towing hawser beyond her. There is no suggestion that there was any abnormal condition of the tide on the day of the collision. Its set and strength is known to navigators in those waters, and was known to the master of the Jansen. He admitted that, "provided the Titus had been in the slack-water, and then had dropped into the tide, it might cause her to make a little sheer,—quite a sheer if the tide was strong;" insisting, however, that she was not in the slack-water, but in the tide, when he passed her. We are satisfied, however, as was the district judge, that the Titus was in the slack-water, going close along the shore, and that her swing followed naturally from her striking the tide. It was a movement, therefore, that should have been anticipated and guarded against by the master of the tug if he decided to overtake and pass her in that part of the channel. The precise moment when the wind died away is not entirely clear upon the evidence; but it was certainly so light when the Jansen passed that he had reason to anticipate that the Titus would not have sufficient headway to control herself when she struck the tide; She was moving, as he admits, so very slowly then,—"scarcely stemming the tide,"—that he supposed she must be retarded by the flood-tide; mistakenly, for we are satisfied she was then in slack-water. The master of the Grace Fee, a tug bound eastward at that time with a tow, and who was called as a witness by the claimants, thought there would be a collision before the Titus began to sheer, because, the wind being light, and the Titus having "little way," he expected the tide would cut her out into the stream far enough to hit the Jansen's tow. For not anticipating and providing for that contingency, we think the Jansen, an overtaking steam-vessel, was in fault. The decree of the circuit court is reversed, and the cause remanded, with instructions to enter a decree in favor of the libelants for damages, with costs of the district court, disbursements of the circuit court, and costs of this court.